***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Holmes and the briefs and arguments of the parties. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award, except for modifications concerning plaintiff's right to future medical treatment and a second opinion as to his permanent partial disability rating.
 ***********
The Full Commission finds as a fact and concludes as matters of law the following, which were entered into by parties as:
 STIPULATIONS
1. At all relevant times, defendant-employer regularly employed three or more employees and was bound by the North Carolina Workers' Compensation Act. The employer-employee relationship existed between defendant-employer and plaintiff on or about June 25, 2001, the date of the injury.
2. Plaintiff's average weekly wage is $842.52.
3. The depositions of Albert K. Bartko, M.D., Peter Dalldorf, M.D. and Sharon Glenn, R.N. have been received and admitted into evidence.
4. Plaintiff's medical motion dated March 17, 2002 with supporting documentation, and Defendants' response to that motion dated April 8, 2002 are before the Full Commission for determination and are included in the record of this matter
5. Defendant's Form 24 Application filed March 19, 2002 and Plaintiff's Response of March 27, 2002 are before the Full Commission and included in the record of this matter.
 ***********
Based upon all of the competent evidence of record the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff is a 41-year-old high school graduate who immigrated to the United States from Nicaragua in 1986.
2. Plaintiff enrolled at Randolph Community College in 1996, and in 1999 while still attending classes there full-time, he began working for defendant-employer as a machine operator. He worked on the second shift so that he could continue his educational pursuits during the day.
3. After completing the program at Randolph Community College and earning a machinist degree and a welder's certificate in late 1999, plaintiff enrolled at North Carolina AT State University to pursue a bachelor's degree in mechanical engineering. He continued to work second shift at defendant-employer. His anticipated graduation date is December 2003.
4. On June 25, 2001 plaintiff was injured by accident at work when the back of his right hand was struck by a winch handle. This claim was accepted by Defendants pursuant to a Form 60 and indemnity benefits have been paid continuously since that time. After the injury and to the present date, although plaintiff did not work, he continued attending classes at North Carolina AT.
5. Plaintiff was initially treated at Randolph Hospital where x-rays taken of the right hand revealed no fracture. He was placed in a splint and referred to High Point Orthopedics, where he presented to Dr. Lucas on June 29, 2001. Physical examination revealed mild dorsal right hand swelling, mild swelling of the fingers, tenderness over the distal second and third metacarpals dorsally and full range of motion of the wrist. Dr. Lucas continued to treat plaintiff conservatively over the next several months. X-rays repeated on July 11, 2001 revealed no evidence of fracture or other changes.
6. On August 7, 2001, an electrodiagnostic study was performed by Dr. Angela Thomas, at the referral of Dr. Lucas, which revealed only a subtle abnormality in the right median sensory nerve. Dr. Lucas wrote plaintiff out of work from June 29, 2001 to July 2, 2001 and released him to one-handed duty thereafter. Defendant-employer did not have one-handed work available.
7. Plaintiff's treatment was transferred to Dr. Dalldorf at Guilford Orthopaedics at plaintiff's request on August 29, 2001. Due to the possibility of evolving pain syndrome, Dr. Dalldorf subsequently referred plaintiff to Dr. Bartko, a specialist in physical medicine and rehabilitation, for evaluation.
8. Dr. Bartko evaluated plaintiff on November 12, 2001. He found that, although plaintiff occasionally had some swelling on the dorsum of the hand, there were no other symptoms suggestive of evolving pain syndrome or reflex sympathetic dystrophy ("RSD"). Plain films of the hand appeared to be normal. Dr. Bartko further found that "true neurologic weakness was not seen" and that "[t]here were elements of the strength exam that did not seem physiologic." Dr. Bartko additionally noted "giveaway or ratchety weakness." which, according to his testimony, indicated that plaintiff was volitionally misrepresenting weakness. This means that while plaintiff said that certain areas were tender upon direct examination, there was no expression of pain when Dr. Bartko distracted plaintiff while examining the same areas. Dr. Bartko stated that this was an inconsistent finding and, if the areas were truly tender, plaintiff should have responded similarly when distracted. Dr. Bartko additionally recorded a concern about the possibility of "secondary gain." He testified that this was a consideration due to the inconsistent physical examination findings.
9. Dr. Bartko's examination for carpal tunnel syndrome was "totally nonphysiologic" and he opined that, even if plaintiff does have some mild carpal tunnel abnormality, this does not explain his reported symptoms of pain. Dr. Bartko testified that the mechanism of plaintiff's injury as well as the examination, comprised of both the physical findings and plaintiff's subjective complaints, were not consistent with a diagnosis of carpal tunnel syndrome. In addition, plaintiff's injury occurred on the back of the hand directly below the second and third fingers and, as Dr. Bartko explained, that is "not an injury that would be expected to anatomically alter the carpal tunnel or produce carpal tunnel syndrome" or to affect the median nerve process through the carpal tunnel because it is protected by a bone in the back of the hand.
10. On November 16, 2001, plaintiff presented to Dr. Bartko for a follow-up examination, at which time Dr. Bartko reviewed the prior nerve conduction study, which he found to be not diagnostic for carpal tunnel syndrome. On that date, Dr. Bartko again noted that the physical examination was devoid of physiologic findings to substantiate plaintiff's subjective complaints. In order to determine the physical functionality of the injured hand, Dr. Bartko referred plaintiff for a functional capacity evaluation.
11. Plaintiff's assertions, contained in his medical motion, regarding an alleged bias held by Dr. Bartko due to plaintiff's ethnic background and his retention of counsel are unsupported by the evidence in this case and are rejected.
12. On December 3, 2001, plaintiff underwent an upper extremity functional capacity evaluation, which demonstrated submaximal effort and symptom magnification. Even with the submaximal effort, the results of the FCE showed that plaintiff was capable of working at least at the light physical demand level. The evaluation further showed that the injured area was performing better than the non-injured areas. Dr. Bartko noted his impression that the validity of the results were affected by plaintiff's poor effort and voluntary submaximal effort and stated his opinion that, based on the findings of the FCE, secondary gain issues are a "strong possibility."
13. On February 8, 2002, plaintiff returned to Dr. Dalldorf who performed a physical examination and noted good motion of plaintiff's fingers and wrist, no pain to palpation, no pain to forearm compression and good ability to make a fist. Dr. Dalldorf's assessment on that date was "perplexing right upper extremity pain." Dr. Dalldorf additionally noted that plaintiff "has performed poorly on his FCE with obvious symptom exaggeration." Dr. Dalldorf recorded that there was nothing else to offer plaintiff medically because of his pain behavior with a lack of clinical findings. On that date, Dr. Dalldorf also released plaintiff to return to work without restrictions and rated his permanent partial impairment at zero percent. Dr. Bartko testified that he agreed with Dr. Dalldorf's plan, finding of maximum medical improvement, return to work release and zero percent rating.
14. At the request of plaintiff's attorney, Dr. Dalldorf re-evaluated plaintiff on July 15, 2002 and noted no objective findings for plaintiff's subjective complaints of pain. Dr. Dalldorf remained of the opinion that he had nothing further to offer plaintiff and that plaintiff's permanency rating was zero percent.
15. Plaintiff's testimony that he was unaware that Dr. Dalldorf had released him to return to full-duty work due to the fact that English is his second language and he did not understand Dr. Dalldorf's directive is not credible and is rejected for several reasons. First, plaintiff immigrated to the United States as an adult in 1986 and has been working in the United States since that time. In addition, immediately following Dr. Dalldorf's February 8, 2002 examination, Sharon Glenn, the nurse case manager, had a conversation with plaintiff in the parking lot of Dr. Dalldorf's office regarding that visit and instructed him to contact defendant-employer about returning to work. Plaintiff did not indicate to Ms. Glenn that he did not understand Dr. Dalldorf's full-duty work release or her instructions. In addition, plaintiff's educational accomplishments of completing a machinist program at Randolph Community College, gaining certification in welding, and having completed, as of the date of Dr. Dalldorf's February 8, 2002 examination, almost three years of a bachelor's degree program in mechanical engineering at North Carolina AT State University, establish that plaintiff possesses reasonable competency in the English language and is able to understand a physician's instructions, particularly given the nature of the instruction that he was being released to unrestricted work. Furthermore, at the hearing, the deputy commissioner observed that plaintiff was able to testify and answer questions without difficulty.
16. A snapshot FCE was performed on July 31, 2001, which revealed that plaintiff is able to work at least at the medium physical demand level. Once again, validity testing revealed poor effort and partially invalid results.
17. Defendant-employer has a written policy, that was acknowledged by plaintiff on April 30, 1999, that "[a]n unsubstantiated absence of more than three working days will be considered as the employee as having voluntarily quit."
18. Plaintiff made no effort to return to his job with defendant-employer upon being released to do so on February 8, 2002. Upon his failure to either return to work or contact his employer to explain his absence from work, his employment was terminated on or about March 1, 2002 pursuant to the above-described policy of defendant-employer.
19. Defendants have paid for all of plaintiff's medical expenses, and plaintiff has received weekly indemnity benefits since the date of injury.
20. Plaintiff filed a medical motion requesting an evaluation with a neurologist. Four medical professionals have expressed opinions that plaintiff's complaints are non-physiologic. Plaintiff's complaints of pain are found to be not credible due to the objective results of his examinations by Dr. Bartko and Dr. Dalldorf as well as the evidence of symptom magnification and sub-maximal effort.
21. Defendants filed a Form 24 Application on March 29, 2002 on the basis that plaintiff was released to return to work without restrictions and given a zero percent rating by his treating physician and, therefore, is no longer disabled and not entitled to indemnity benefits after being so released.
22. On October 6, 2002, plaintiff filed a request for a second opinion on the rating of zero percent to the right hand given by Dr. Dalldorf on February 8, 2002.
23. The weight of the credible evidence in this case establishes, and the Full Commission so finds, that plaintiff reached maximum medical improvement on February 8, 2002, and that he was able to return to work without restrictions at that time.
 ***********
Based on the foregoing findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On June 25, 2001 plaintiff sustained a compensable injury by accident to his right hand and was paid ongoing temporary total compensation by defendants pursuant to a Form 60. N.C. Gen. Stat. §97-2(6).
2. As of February 8, 2002, plaintiff was capable of returning to full-duty work without restrictions. Since plaintiff failed in his burden of proving that, after that date, he remained disabled, he is not entitled to further medical treatment necessary to effect a cure, or give relief, or lessen the period of disability. Thus plaintiff is not entitled to additional disability compensation, medical treatment, including the requested one-time evaluation with a neurologist or pain management or hand specialist, or vocational assistance. N.C. Gen. Stat. §§ 97-25, 97-29, 97-30.
3. The basis of Defendants' Form 24 Application is meritorious and based on substantial competent and credible evidence of record. Plaintiff is not entitled to indemnity compensation after March 19, 2002, the date upon which Defendants filed their Form 24. N.C. Gen. Stat. § 97-18.1.
4. Defendants are entitled to a credit on all indemnity benefits paid after the filing of their Form 24 application on March 19, 2002. N.C. Gen. Stat. § 97-42.
5. Plaintiff is not entitled to a second opinion on the permanency rating given by Dr. Dalldorf because Dr. Dalldorf's exam was at plaintiff's request and was not an examination requested by the employer or ordered by the Industrial Commission pursuant to N.C. Gen. Stat. § 97-27(a), therefore the provisions of N.C. Gen. Stat. § 97-27(b) do not apply.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 ORDER
1. Under the North Carolina Workers' Compensation Act and governing case law, plaintiff's claim for indemnity benefits after February 8, 2002, must be and hereby is DENIED.
2. Plaintiff's claim for vocational rehabilitation and/or retraining must be and hereby is DENIED.
3. Plaintiff's medical motion requesting a one-time evaluation with a neurologist or pain management or hand specialist is DENIED.
4. Defendants' Form 24 Application is APPROVED and defendants are entitled to a credit for all indemnity compensation paid from March 19, 2002 at the present time.
5. Plaintiff's request for a second opinion evaluation of Dr. Dalldorf's rating is DENIED.
6. The Defendants shall pay the costs, including an expert witness fee of $250.00 to Dr. Albert Bartko, $335.00 to Dr. Peter Dalldorf, and $50.00 to Sharon Glenn R.N.
This the 20th day of November 2003.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/____________ BUCK LATTIMORE CHAIRMAN
DISSENTING:
 S/_____________ THOMAS J. BOLCH COMMISSIONER